AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Nokia Android Smartphone with a black and red case seized from David Warren on September 12, 2023

)
)
)
)
)
)

Case No.  **23mj3448-SBC**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18, USC sec. 1591 | Attempted Sex Trafficking by Force, Fraud, or Coercion |

The application is based on these facts:
See Attached Affidavit of HSI Special Agent Aron Marcellus, incorporated herein by reference.

☑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Special Agent Aron Marcellus, HSI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: _____09/21/2023_____

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Steve B. Chu, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Aron C. Marcellus, Special Agent with Homeland Security Investigations, being duly sworn, hereby state as follows:

### INTRODUCTION

1.     I make this affidavit in support of an application for a search warrant to search the following electronic device, as described in Attachment A, and seize evidence of crimes, specifically, violations of Title 18, United States Code, Section 1591, as more particularly described in Attachment B:

Nokia Android Smartphone with a black and red case

seized from David Warren on September 12, 2023

**(Target Device)**

This search supports an investigation conducted by Homeland Security Investigations (HSI), in conjunction with the San Diego Human Trafficking Task Force (SDHTTF), into David WARREN (**WARREN**) who is charged with the crimes mentioned above. A factual explanation supporting probable cause follows.

2.     The **Target Device** was seized on September 12, 2023, during WARREN's arrest for sex trafficking of two adult females (AF1 and AF3) through force, threats of force and coercion.   The **Target Device** is currently in the possession of SDHTTF.

3.     Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4.     The information set forth in this affidavit is based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications

with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of obtaining a search warrant for the **Target Device**, it does not set forth each and every fact that I or others have learned during the course of this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5.     I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code.

6.     I am a Special Agent (SA) employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I am a graduate of the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia and I have been employed as a SA since September 2017. I have been trained to conduct criminal investigations for multiple violations of federal and state laws including, but not limited to alien smuggling and narcotics smuggling, human trafficking, weapons trafficking, and organized criminal activity.  I am currently assigned to the Border Enforcement Security Task Force (BEST), Human Smuggling/Trafficking Group specializing in a variety of criminal and financial investigations. My primary responsibilities include investigating human smuggling/ trafficking and narcotics violations. These investigations include, but are not limited to, investigations involving wire fraud, money laundering, financial crimes and bulk cash smuggling.

7.     Prior to being a SA with HSI, I was a Supervisory U.S. Border Patrol Agent (SBPA) with U.S. Customs and Border Protection (CBP) from April 2017 to September 2017 and a U.S. Border Patrol Agent (BPA) from February 2008 to

March 2017. As a BPA, I conducted law enforcement field operations, interviews, made arrests and prepared administrative and criminal cases related to the violation of immigration and narcotics laws.

8.      Since October 2019, I have been assigned to the SDHTTF where I have participated in investigations involving the exploitation of children and adults for illicit commercial sex activity, human trafficking, forced labor, various illegal activity of criminal gang members and have performed a variety of related investigative tasks.

9.      My experience as an HSI Special Agent has included the investigation of cases involving the use of computers and the internet to commit crimes. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer evidence seizure and processing, and various other criminal laws and procedures. I have personally participated in the execution of search warrants involving the search and seizure of cellular telephones and other electronic devices.

10.     Through my training, experience, and consultation with other law enforcement officers, I have learned that:

a.      Individuals involved in illicit commercial sex maintain records, including electronic files, related to their illicit business on computers and computer servers hosting internet applications such as electronic mail (email) and personal social networking web pages;

b.      Individuals involved in illicit commercial sex often solicit clients through electronic advertisements and other media, such as Craigslist, MegaPersonals, Skipthegames, and other social media sites accessed on cellular telephones and computers;

c.      Individuals involved in illicit commercial sex maintain records of correspondence relating to client contact information as well as travel and lodging arrangements involved in such illegal activity;

d.      Individuals involved in illicit commercial sex maintain documents and files containing names of associates and/or coconspirators involved in prostitution;

e.      Individuals involved in illicit commercial sex maintain financial records, bank statements, money orders, money order receipts, and cash that are evidence of payments made in conjunction with prostitution;

f.      Individuals involved in illicit commercial sex use cellular telephones, tablet, desktop, removal hard drives and flash drives, and notebook computers and maintain these items on their person and/or in their residences and/or vehicles. Individuals involved in illicit commercial sex use cellular telephones, tablet, notebook computers, and removable storage media to increase their mobility, coordinate illicit activities, and to provide pimps and prostitutes with instant access to phone calls, voice messages, text messages, instant messaging (IM) and internet-based correspondence. Individuals involved in illicit commercial sex will use multiple cellphones, tablets, notebook computers, and phone numbers in order to maintain contact with other pimps, prostitutes, complicit businesses, and clients. These electronic devices contain wire and electronic data concerning telephonic contact records, text messages, and electronic mail messages with co-conspirators and clients, as well as telephone books containing contact information for co-conspirators and clients. Individuals involved in illicit commercial sex also utilize digital cameras, cellular telephones, desktop and notebook computers with photograph and video capabilities to take photographs and videos of themselves as well as other coconspirators for the purpose of electronic advertising and promotion of prostitution. Moreover, I know that digital evidence can be stored on

4

a variety of systems and storage devices including: hard disk drives, DVD ROMS, pagers, money chips, thumb drives, flash drives, and portable hard drives;

g. Individuals involved in illicit commercial sex use social media sites like Facebook or Instagram to find clients and prostitutes. They use Facebook messaging applications to communicate with prostitutes and customers to increase their mobility and coordinate illicit activities. Individuals involved in illicit commercial sex will often use multiple social media accounts in order to maintain contact with other pimps, prostitutes, complicit businesses, and clients. These social media accounts contain electronic data concerning instant messaging, electronic mail and social media addresses of co-conspirators and clients, including contact information for co-conspirators and clients. Individuals involved in illicit commercial sex also utilize social media to store and display, commonly known as posting, photographs, videos, and text of themselves as well as other co-conspirators for the purpose of electronic advertising and promotion of prostitution.

11. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, the evidence of illegal activity described above in paragraphs "a" through "g" is maintained by individuals involved in illicit commercial sex in property that they and their associates live in and operate as well as on online accounts including email accounts, which can be accessed on computers and cellular telephones.

## FACTS IN SUPPORT OF PROBABLE CAUSE

12. On September 12, 2023, at approximately 1:14 pm, a San Diego County Lifeguard was approached by an adult female (AF1). AF1 stated she was being trafficked and brought to San Diego for the purpose of prostitution. AF1 described the suspect as a black male adult, wearing a green face mask, white T-shirt, blue jeans and had two (2) other females with him (AF2 and AF3), one who

wore a pink skirt. AF1 stated they drove to San Diego in a white sedan with Nevada plates. AF1 further described the car as having the front license plate in the windshield. AF1 stated that they rented a hotel room at the EZ8 Motel in Mission Valley.

13.    At 3:00 pm, the SDHTTF was notified of the incident. Task Force Officers (TFO) assigned to the SDHTTF interviewed AF1 while additional TFOs conducted surveillance at the EZ8 Motel, located at 4747 Pacific Highway, in the city of San Diego. During the interview AF1 stated that she was taken from Las Vegas, Nevada where she was working as a prostitute. AF1 stated that WARREN approached her, slapped her in the face and told her to get into his vehicle because she was going to "trap" for him. Based on my training and experience, I know "trap" is a slang term that refers to earning money through commercial sex. AF1 stated that once they arrived in San Diego, WARREN gave all three females blue "m30" pills (believed to be fentanyl). AF1 stated that at some point in San Diego she fell asleep in the motel room and WARREN began choking her with both hands to wake her up because it was time to work.

14.    At approximately 6:25 pm, TFOs observed a white Chevy Malibu bearing Nevada license plate 254V83 parked in the rear parking lot of the EZ8 Motel. The front license plate to the vehicle was in the front windshield. TFOs observed a black male, later identified as David WARREN, with no shirt, wearing white shorts, and a green and black skull cap, exit the driver side of the Chevy Malibu. TFOs then observed a black female, who was later identified as AF3, wearing a pink skirt and black shirt exit the vehicle. Based on AF3's overall appearance, it was believed she may have been a juvenile. TFOs observed a black female, later identified as AF2, wearing jean shorts and a jean top, with reddish/black hair, exit the Chevy Malibu. WARREN, AF2 and AF3 proceeded up the stairs and stopped on the second floor of the motel. WARREN was on his cell

phone and proceeded to open the door to room #240. WARREN allowed AF2 and AF3 to enter the room, as he followed them in and closed the door.

15.     At approximately 7:30 pm, TFOs observed WARREN exit room #240, walk down the stairs and get into the driver seat of the Chevy Malibu. The Chevy Malibu was originally parked, front end in, with no view of room #240. WARREN then reversed the Chevy Malibu directly back to a parking spot with a non-obstructed view of room #240. WARREN remained in the driver seat of the Chevy Malibu.

16.     As WARREN remained in the driver seat of the Chevy Malibu, AF3 exited the room and left the door open to room #240. AF3 walked along the balcony south and walk down the stairs. AF3 remained near the stairwell area and began to look toward the entrance of the EZ8 Motel. AF3 waited for approximately two (2) minutes and met an unknown white male, later identified as S.S. (75). S.S. and AF3 proceeded up the stairwell and entered room #240 and closed the door. Based on my training and experience, I believed WARREN had exited the motel room just prior to a prostitution date, repositioned his vehicle in a way to supervise the act and provide protection for AF2 and AF3. Furthermore, based on AF3s physical appearance, TFOs believed AF3 might be under the age of 18 and at risk of becoming a victim of sexual assault.

17.     TFOs directed uniformed officers with the San Diego Police Department (SDPD) to WARREN's location to detain WARREN and intervene in the possible sexual assault/prostitution encounter that was occurring in motel room #240. SDPD detained WARREN in the vehicle. TFOs wearing agency specific markings demanded entry into motel room #240. S.S. opened the door to room #240. As TFOs entered the room AF2 and AF3 were only wearing underwear.

18.     TFOs interviewed AF2 and AF3 and both stated that they went to Black's Beach (a nude beach in San Diego County) with WARREN today and this

is where they initially met S.S. AF2 and AF3 stated that they invited S.S. back to their motel room. S.S. later stated he withdrew $200 from the ATM to pay AF2 and AF3 because he believed their encounter would lead to an act of prostitution.

19.     AF2 and AF3 gave consent for TFOs to view their cell phones. TFOs located evidence in the cell phones that shows WARREN not only had knowledge that AF2 and AF3 are prostitutes but also encouraged them to engage in prostitution through violence. TFOs located a text message WARREN sent to both AF2 and AF3 on September 12th at approximately 7:45 pm that stated "LMK the price and time length soon as u know." This would have been right before WARREN was detained by police and while S.S. was in the motel room with both AF2 and AF3.

20.     On September 13, 2023, TFOs conducted a more in-depth review of AF2's cell phone. Based on the investigation, at this time, TFOs believed the following text messages were sent, while all parties involved were in Las Vegas, Nevada. TFOs discovered text messages between WARREN and AF2 that were consistent with human trafficking with force. On September 8, 2023, WARREN texted AF2, "Once again I said come and get some rest. This is why we beef and why I be all on [AF3] and not u. She don't nag once she get hit she good. So maybe that's what u need as well… A good hit". On the same date, WARREN sent AF2 another text message, "Well don't come here with the moody shit snapping none of that [AF3] got hit in her mouth and I'm tryin not to hit u in urs. Y'all bitches don't listen I said come get some rest. But atp idc what u do but if u bring attitude here and make this akwars andi have to get a second room I'm not imma just be done with you. I can't afford takin care of two females that pussy don't sell. Then I told ur stupid ass take her to the social security office. Smfh". Based on my training and experience, I know that WARREN is threatening AF2 with violence

by using AF3 as an example of this violence if AF2 and AF3 do not engage in commercial sex.

21.    On September 13, 2023, TFOs conducted a more in-depth review of AF3's cell phone. TFOs discovered several text messages between WARREN and AF3 that were consistent with human trafficking with force. On September 7, 2023, AF3 texted WARREN, "Like stop it. You wanna beat on me so bad get it over with. It's literally not even worth living anymore" and "At this point I'm begging you. End it. Cause I'm tired of this shit. I literally just wanna die my nigga." A few messages later, AF3 sent WARREN a message which said, "Maybe if you didn't kick me in my check I could breath better and do more." WARREN responded to the text, stating "Cash app is working" and "Send that and then I'm only 405 short."

22.    On September 8, 2023, AF3 sends a text to WARREN stating, "Selling pills is not selling your body David. You cannot compare those. Especially when selling a beaten, battered, bruised and banged up body." WARREN said, "It don't matter what I do I get results. Selling ur body don't carry life selling Fetty pill does." WARREN replies to AF3's text stating "I can be very hard or very loving. It's no middle ground. [AF2] don't get hit cuz she shuts up when I'm ranting. I hate spending money I got put up. I'm trying to get us to a level y'all ain't gotta sell pussy and I'll stil love u the same cuz u hold more value than that good ass pussy u got."

23.    On September 11, 2023, WARREN sent a message to AF3 which, in part, said, "So you got exes and shit in sandiego? Yeah we really gone have to be focused on getting the pics and getting the net popping. I will work as well make a profile on POF etc and help both y'all lock in some dates. Lets work in Cali. Not here." Based on my training and experience, I know the term "net" refers to the internet, where commercial sex victims will get commercial sex dates from online

prostitution advertainments. The term "POF" refers to "Plenty of Fish," an online dating application.

24.     On September 11, 2023, WARREN sent AF3 a message in reference to AF1 which said, "Fasho he gone fumble and she got no other option than to choose up and pay us while we on the road. Look at is as we got a bitch and get in her brain. Cuz she gone pay and he gone fumble fs" and "Is she worth to be a wifey." AF3 said, "She a smoker she was bout to fall out the chair face first just now idk." She sent him two photographs of AF1 in which AF1 appears to be unsteadily seated in a chair and near unconscious. Based on my training and experience, the term "choose up" refers to a victim "agreeing" to work for a particular trafficker/pimp. The term "wifey" refers to victims that all work for the same trafficker/pimp.

25.     AF3 continued to say, "If I had to compare liabilities to assets… It looks like she brings more liabilities…" WARREN said, "She gotta go." AF3 said, "So… How you wanna go about this cause we not in the area for me to beating daylights out of bitches (two smiley emojis)." WARREN said, "I was thinking if she can make a few dates before she get put out it will add to urr pot we can make her do all the in calls in Diego." Based on my training and experience, the term "in calls" refers to when sex buyer meets the commercial sex worker at her location. This is in contrast to an "out call," where the victim meets the sex buyer.

26.     Photos recovered from AF3's cell phone show images of WARREN, AF2 and AF3 in San Diego, California in an area known as Black's Beach. One such image shows WARREN holding a leash that is connected to a collar around AF3's neck. After detaining WARREN at the EZ 8 Motel, TFOs recovered two collars that appeared to be meant for humans, one of which matched the collar worn by AF3 in the photo.

27.     Another image found on AF3's cell phone shows AF2 and AF3 at Black's Beach with a male identified as "Mario" slapping AF3's buttocks. In a video that shows this same exchange, WARREN can be overheard telling Mario to slap AF3 harder. And lastly, a photo was taken of WARREN when he was booked into San Diego County Jail. WARREN's back tattoos depict two nude women back-to-back with chains around their necks. The image of the female on the left appears to have her mouth bound shut. Above the women is an image of a man holding both chains in his hand. Surrounding both females are images of money bags. Based on my training and experience, I know that these types of tattoos are specific to the prostitution sub-culture where the pimp/trafficker shows his dominance over women. It additionally shows that WARREN places the importance of money above everything to include women.

28.     Based on statements made by AF1 and the in-depth-review of AF2 and AF3's cell phones, along with the observation of SDHTTF TFOs, I believe WARREN was attempting to sex traffic AF1 with force in San Diego, sex traffic AF3 with force in Las Vegas, and sex traffic AF2 in Las Vegas. As seen above, texts messages show WARREN used physical violence as well as mental and emotional manipulation to maintain AF2 and AF3 as his prostitutes and encourage AF2 and AF3 to engage in prostitution, for his own financial gain. Text messages also shows WARREN continued his criminal conduct, by transporting AF1, AF2 and AF3 from Las Vegas, Nevada to San Diego, California, to continue to engage in prostitution in San Diego County.

//

//

//

//

//

29.     On September 12, 2023, when SDPD uniformed officers contacted WARREN in his vehicle, the Target Device was in WARREN's possession. SDPD separated WARREN from the Target Device[1].

30.     Based on these statements, along with the other messages exchanged during the conversation, I believe that WARREN, beginning on or about September 11, 2023, did knowingly recruit, persuade, induce, and entice an individual (AF1) through force, threats of force and coercion to engage in prostitution.  Additionally, WARREN beginning on or about September 7, 2023, did knowingly recruit, persuade, induce, and entice an individual (AF3) through force, threats of force and coercion to engage in prostitution.

## METHODOLOGY

31.     It is not possible to determine, merely by knowing the mobile electronic device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Mobile electronic devices, including cellular telephones and tablets, can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers and installable software now allow for their subscribers and users to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access

---

[1] The seizing SDPD officer noted in his original report that the Target Device was a Samsung-brand cell phone. The Target Device is a Nokia-brand cell phone. The seizing SDPD officer is preparing a supplemental report which will list the Target Device as a Nokia-brand cell phone.

to the network. Unlike typical computers, many mobile electronic devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some mobile electronic device models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

32.     Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

33.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN DATA

34.     Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

35.     Based on the foregoing, I submit there is probable cause to believe items that constitute evidence, fruits, and instrumentalities of violations of federal

criminal law, namely, 18 U.S.C. §§ 1591, as described in Attachment B, will be found in the property to be searched, as described in Attachment A.

36.    I therefore respectfully request that this Court issue warrants authorizing me, an HSI Special Agent, or another law enforcement officer, to search the **Target Device**, as described in Attachment A and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Aron C. Marcellus
Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 21th day of September 2023.

_____
HONORABLE Steve B. Chu
United States Magistrate Judge

# **ATTACHMENT A**
# **ITEM TO BE SEARCHED**

The property/items to be searched is/are described as follows:

Nokia Android Smartphone with a black and red case
seized from David Warren on September 12, 2023
**(Target Device)**

The **Target Device** is currently being held at the San Diego Human Trafficking Task Force located at 9425 Chesapeake Dr. San Diego, CA 92123.

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, video, telephone numbers, contact information, web browsing history, documents, data stored within applications, and location data, for the period of August 12, 2023, up to and including September 12, 2023:

    a.      tending to indicate efforts to recruit, entice, harbor, transport, provide, obtain, or maintain a person for the purposes of engaging in a commercial sex act;

    b.      tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate human trafficking;

    c.      tending to identify co-conspirators, criminal associates, or others involved in human trafficking;

    d.      tending to identify funding sources, bank accounts, and financing methods involved in human trafficking;

    e.      tending to show efforts to solicit commercial sex acts on websites including but not limited to megapersonals.com or skipthegames.com;

    f.      tending to identify travel to or presence at locations used for commercial sex acts;

    g.      tending to identify the user of, or persons with control over or access to, the subject phone; and/or

h.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 18, United States Code, Sections 1591.**

The seizure and search of the cellular phones shall follow the procedures outlined in the methodology section in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phones may be searched for the evidence above.